CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
for Lynchburg
DEC 02 2008
JOHN F. CORCORAN, CLERK
BY: S. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| HEATHER D. HARTMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 6:07cv44 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

Plaintiff Heather D. Hartman ("Hartman") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for child's insurance benefits and supplemental security income under the Social Security Act (the "Act"). Hartman argues on appeal that the Administrative Law Judge ("ALJ") erred by failing to properly evaluate Hartman's complaints of pain and by finding her complaints to be incredible. As the ALJ did not adequately consider the impact of Hartman's treatment for her inoperable ganglioneuroma on her ability to work, the undersigned finds that the ALJ's opinion is not supported by substantial evidence and thus recommends that this case be remanded for a consultative examination and functional evaluation.

I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial

evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart,

296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the RFC,[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Hartman was born in 1986, (Administrative Record, hereinafter "R." 53, 398), and completed the eleventh grade. (R. 487.) She is considered a "younger individual" under the Act. 20 C.F.R. §§ 404.1563(b), 416.963(b). Hartman worked for approximately one month as a secretary at Parrots Cove Boat Rental; she has no other employment of record. (R. 488.) Hartman's duties included carrying seven to ten

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1529(a).

pounds, answering phones, making reservations, and cleaning the office. (R. 488.) She claims she quit working because of pains in her back. (R. 488.) She presented at the emergency room on September 1, 2005, (R. 126-33), and September 28, 2005, (R. 134-47), complaining of lower abdominal pain. A CT scan of the abdomen revealed a 4.3 x 3.0 cm lymph nodal mass around the head of the pancreas and portal vein. (R. 150, 155.) She was sent to the University of Virginia Health System for further evaluation, which included upper endoscopy with ultrasonic evaluation, an attempted biopsy, a percutaneous needle biopsy, and, subsequently, exploratory surgery performed on November 30, 2005. (R. 279; see also R. 157-162, 198, 200, 232, 236-42, 243-58.) She was diagnosed with a ganglioneuroma.[2] (R. 264, 276, 278-79, 489.)

Hartman alleges a disability onset date of September 29, 2005. (R. 13, 53, 67.) Her application for benefits was rejected by the Commissioner initially and again upon reconsideration. An administrative hearing was convened before an ALJ on January 31, 2007. (R. 481-506.)

In determining whether Hartman is disabled under the Act, the ALJ found that Hartman suffers from severe impairments, including obstructive sleep apnea, locally extensive ganglioneuroma and back pain. (R. 15.) The ALJ further opined that since September 29, 2005, Hartman has had the residual functional capacity ("RFC") to frequently lift and carry 10 pounds, occasionally lift and carry 20 pounds,[3] sit, stand and

---

[2] A ganglioneuroma is a benign neoplasm composed of nerve fibers and mature ganglion cells; regarded by many as a fully differentiated neuroblastoma. Dorland's Illustrated Medical Dictionary 754 (30th ed. 2003).

[3] In his decision, the ALJ found Hartman had the RFC to carry 10 pounds occasionally and 20 pounds frequently. (R. 17.) This finding makes no sense and is assumed to have been made in error. Based on the hypothetical posed to the vocational expert ("VE") at the administrative hearing, the undersigned believes the ALJ's RFC finding to be that Hartman is capable of carrying 10 pounds frequently and 20 pounds occasionally. (R. 502.)

walk for six hours in an eight hour day, and occasionally climb ladders but never climb ropes or scaffolds. (R. 17.) The ALJ further found that Hartman's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible. (R. 18.) Considering Hartman's age, education, work experience, and RFC, the ALJ concluded that Hartman can perform jobs that exist in significant numbers in the national economy. (R. 21.) The Appeals Council denied Hartman's request for review and this appeal followed. (R. 6-8.)

### III

Hartman argues that the ALJ improperly evaluated her complaints of pain and failed to take into account her ganglioneuroma, as well as her treatment regimen and the effect it has on her ability to engage in gainful employment. The undersigned agrees that the ALJ did not properly consider the impact Hartman's treatment has on her ability to work.

The record does not contain an opinion from a treating physician regarding functional limitation or Hartman's ability to work. Only one medical opinion of record states Hartman is capable of working; that opinion was rendered by Pamela S. Duff, a state agency physician. (R. 320.) Dr. Duff recognized that Hartman "is on a lot of medications, she has pain and nausea and she has lots of medical appointments," but noted that her pain and activities of daily living seemed to be improving following surgery. (R. 320.) Dr. Duff considered Hartman's statements regarding her symptoms and their effects on function, her medical history and the type of treatment she receives, and consistency of the evidence in determining that her complaints were not credible. (R. 320.) Of particular note, Dr. Duff found that following surgery to resect the mass in

5

her abdomen, Hartman was "just being monitored and no treatment is being done at this time." (R. 320.)

In fact, Hartman has been treated rather aggressively, traveling to the University of Virginia every three to six months to be treated with radioactive iodine injections followed by MIBG body scans for this inoperable ganglioneuroma. (R. 491-92; see also R. 248-49.) She required these treatments in January, 2006, (R. 263-67), May, 2006, (R. 292-99), August, 2006, (R. 365-66) and February 2007, (R. 415-425). At the administrative hearing, Hartman testified that her doctors plan to schedule these treatments every three months instead of every six months because she has been experiencing pain. (R. 491-92). The record gives no indication as to how many of these treatments will be necessary or what future treatment will be required. Instructions for patients receiving such treatment include the following:

1. Drink plenty (lots) of fluids any kind for at least the first 2 days.
2. Empty your bladder frequently.
3. Flush the toilet 2 times after each time you urinate for 48 hours.
4. Maintain a prudent distance from others for at least the first 2 days.
5. Sleep alone in a bed for at least 1 night.
6. Do not travel by airplane or mass transportation for at least the first 2 days.
7. Do not travel on a prolonged automobile trip with others for at least the first 2 days.

(R. 396.) Treatment notes indicate that prior to administration of the radiopharmaceutical, Hartman is instructed to protect the thyroid gland from unnecessary

6

radiation by oral ingestion of a SSKI[4] solution. (R. 365, 373.) She is further advised to continue the oral ingestion of SSKI solution for 10 days following the injection. (R. 365, 373.) Dr. Duff does not account for this treatment plan in her March 7, 2006 opinion regarding Hartman's ability to work. (R. 320.)

In his decision, the ALJ mentions the MIBG testing but notes only that the tests have continued to indicate normal results and there is no indication of abnormality in the MIBG uptake. (R. 19-20.) There is no discussion of the effect this treatment has on Hartman's health and ability to work. The ALJ merely says there is "no indication that the claimant's tumors are of a disabling nature that would preclude her from having the ability to work." (R. 20-21.) Even if this statement is indeed true, the effect Hartman's aggressive treatment regimen has on her ability to work is notably absent from the ALJ's opinion.

At the administrative hearing, the ALJ posed a hypothetical to the VE incorporating his RFC finding, (see R. 503), and further asked the VE:

> [E]very three months, the hypothetical individual would have to travel to UVA for this scan where they get injected with radiation, and then, you know, at a minimum would be up there two days, and then, of course, might have a day or two to recover after that, what sort of impact would that frequency of having to go for that treatment have upon the jobs that you, that you cited?

(R. 503-04.) The VE testified that missing two to three days each month was "right on the border" but said generally this absence would not preclude some type of competitive employment. (R. 504.)

---

[4] SSKI is a trademark for a preparation of potassium iodide. Dorland's illustrated Medical Dictionary 1747 (30th ed. 2003).

7

The VE cannot opine as to the impact this treatment has on Hartman's overall health and her ability to work; he can merely testify as to whether her expected absence from work every three months would preclude competitive employment. In the hypothetical, the ALJ recognized that Hartman will need to be at the University of Virginia for treatment for a period of two days every three months, and then assumes that she will need only a day or two to recover from treatment. (R. 503-04.) The treatment instructions require patients to stay away from other individuals for 48 hours after treatment. (R. 396.) Spending two days receiving treatment and the two following days isolated from other individuals means Hartman would be absent from work, at a minimum, for four days every three months. What is more, this estimate does not account for any negative effects this treatment might have on Hartman's health, fatigue, and overall ability to work.

On April 18, 2007, certified family nurse practitioner Gene Amstutz filled out a Medical Report for General Relief, Medicaid and Temporary Assistance for Needy Families, indicating this treatment regimen renders Hartman unable to work or severely limits her capacity for self-support for a period of 12 months. (R. 434.) Mr. Amstutz, whose name appears on numerous treatment records from Village Family Physicians, (R. 321, 322, 324, 335, 337, 338), further indicated that Hartman's prognosis was unknown and noted that treating her tumor was exhausting and time consuming. (R. 434.) While the undersigned recognizes that a nurse practitioner is not an acceptable medical source under the regulations, 20 C.F.R §§ 404.1513, 416.913, this document suggests that further development of the record as to the impact of Hartman's treatment on her ability to work is in order.

8
Case 6:07-cv-00044-NKM-mfu Document 18 Filed 12/02/08 Page 8 of 10 Pageid#: 74

Moreover, at the administrative hearing, Hartman discussed experiencing pain in her ribs and back after treatment, and as a result of her increased pain, doctors have found it necessary to perform MIBG scans every three months instead of every six months. (R. 492.) She also experiences fatigue, (R. 493-94), nausea and vomiting, (R. 494), and takes Darvocet and Lortab for pain. (R. 497.)

Based on this record, the undersigned cannot find that the ALJ's decision is supported by substantial evidence. The one opinion in the record that states Hartman can work was not rendered by a treating physician and indicates Hartman is not being treated for her ganglioneuroma. In fact, Hartman has been receiving treatment involving radioactive iodine injections followed by MIBG body scans every three months. The record needs to be further developed with respect to the impact this treatment has on Hartman and her ability to work. Thus, the undersigned recommends that this case be remanded for a consultative medical evaluation and opinion. 20 C.F.R. §§ 404.1517, 1519a, 416.917, 919a.

## IV

It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence. In this case, the undersigned finds that substantial evidence does not support the Commissioner's decision, as the ALJ did not adequately consider the impact Hartman's treatment for her ganglioneuroma has on her ability to work. Accordingly, the undersigned recommends that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a consultative medical examination and functional evaluation.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

ENTER: This 2nd day of December, 2008.

Hon. Michael F. Urbanski
United States Magistrate Judge