CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JAN 1 5 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

HEATHER D. HARTMAN,

                 *Plaintiff,*

v.

MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,

                 *Defendant*

CIVIL NO. 6:07CV00044

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter is before the Court upon the parties' cross motions for summary judgment (docket no. 12, 14), the Report and Recommendation of the U.S. Magistrate Judge (docket no. 18), and the Commissioner's objections thereto (docket no. 19).

I referred this matter to the Honorable Michael F. Urbanski, U.S. Magistrate Judge, for proposed findings of fact and a recommended disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) & (C). The Magistrate filed his Report and Recommendation ("Report") on December 2, 2008, recommending that this Court enter an order granting Plaintiff's motion for summary judgment and remanding the case to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g). The Commissioner timely filed objections to the Report on December 16, 2008, obligating the Court to undertake a *de novo* review of those portions of the Report to which objections were made. 28 U.S.C. § 636(b) (2006); *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir. 1982). The Plaintiff did not file a response to the Commissioner's objections. After a thorough examination of the documented record, the applicable law, and the Commissioner's objections, I hereby decline to follow the Report of the Magistrate Judge and will grant the Commissioner's motion for summary judgment.

# I. BACKGROUND

Plaintiff Heather Hartman filed concurrent applications for Adult Disabled Child benefits and supplemental security income on November 21, 2005. (R. 53-57, 398-404.) She alleged a disability onset date of September 29, 2005. (R. 13, 53.) At the time of filing, she was nineteen years old. Hartman was diagnosed with a ganglioneuroma in her abdomen, after seeking treatment for back and abdominal pain. (R. 488-89.) After several inconclusive scans, Hartman underwent surgery to resect and biopsy the mass for the purpose of diagnosis. (R. 248-50.) Hartman's doctors concluded that the mass was benign, but that it should be closely monitored for any growth or malignancy. (R. 250, 256.) In order to monitor the mass, Hartman must undergo MIBG scans every three months at the University of Virginia hospital. (R. 491-92.) This procedure involves a two-day stay at the hospital, and instructions to avoid close contact with other people for the first 48 hours after the procedure (R. 396). Harman has also been diagnosed with mild sleep apnea (R. 494), has experienced tachycardia (R. 495), and is taking medication for depression after expressing thoughts of suicide (R. 497). Hartman's medical records in general reflect consistent complaints of pain, including rib and back pain, fatigue and nausea. She testified before the ALJ that she has difficulty standing for long periods of time and must sit or lie down frequently due to fatigue and back pain. (R. 498-99.)

The Plaintiff's claims for benefits were denied initially and upon reconsideration. (R. 25-26, 32-34, 405-07, 412-14.) Thereafter, Hartman timely requested a hearing before an administrative law judge ("ALJ"), which was held on January 31, 2007. (R. 37, 483-506.) In a decision ultimately adopted as the final decision of the Commissioner, the ALJ concluded that while Hartman suffers from severe impairments, including obstructive sleep apnea, locally extensive ganglioneuroma and back pain (R. 15), she could perform jobs that exist in significant numbers in the national economy (R. 21). The ALJ determined that since September 29, 2005,

Hartman has had the residual functional capacity ("RFC") to lift and carry up to 20 pounds frequently, to sit, stand and walk for six hours in an eight hour day, and to occasionally climb ladders (but never ropes or scaffolds). (R. 17.) The ALJ also found that Hartman's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (R. 18.)

The ALJ further relied upon testimony by a vocational expert, who testified that Hartman should be able to perform sedentary or light work, such as a counter clerk or a sorter at a laundry. (R. 502-03.) The vocational expert also testified that even if Hartman were required to miss three days of work every three months to undergo the scans to monitor her mass, it would not necessarily preclude her from maintaining employment. (R. 503.) However, if Hartman had to lie down three to four times during the work day, for 20 to 30 minutes each time, it would likely compromise any type of employment. (*Id.*) Based on all of these factors, the ALJ found that Hartman was not disabled under the terms of the Social Security Act and thus not entitled to disability insurance benefits or supplemental security income. (R. 13.)

Hartman timely appealed the ALJ's decision to the Appeals Council, which denied review and adopted the ALJ's decision as the final decision of the Commissioner. (R. 6-8.) Hartman timely filed the instant action on October 29, 2007. The parties filed cross-motions for summary judgment, and the Magistrate recommended that this Court enter an order granting Hartman's motion for summary judgment and remanding the case to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g).

The Magistrate found that the ALJ did not properly consider the impact that Hartman's treatment for her ganglioneuroma has on her ability to work. The Magistrate notes that only one medical opinion states that Hartman is capable of working, and that the opinion does not account for the treatment plan set out by Hartman's physicians. Similarly, the Magistrate states that the

-3-

ALJ's decision did not address the effect of the treatment plan on Hartman's ability to work. The Magistrate concluded that the record need to be developed further, because Hartman's treatment plan would require her to be absent from work for a minimum of four days every three months, and because no evidence was on the record regarding the effects that the treatment might otherwise have on Hartman's health, energy level and overall ability to work. The Magistrate therefore recommended that the case be remanded for a consultative medical evaluation and opinion. 20 C.F.R. §§ 404.1517, 1519a, 416.917, 919a.

In his objection to the Magistrate's Report, the Commissioner argues that the Magistrate erroneously applied the "substantial evidence" standard of review, and that there is substantial evidence in the record to support the ALJ's determination that Hartman was not entirely credible and that Hartman's impairments were not disabling. Furthermore, the Commissioner contends, the Magistrate erred in recommending the need for a functional evaluation and consultative evaluation.

## II. STANDARD OF REVIEW

This Court must uphold the Commissioner's factual findings if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. § 405(g) (2000); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), and consists of "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F. 2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision was supported by substantial evidence, the Court may not "re-weigh conflicting evidence, make credibility determinations, or

substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks omitted). Accordingly, a court may not undertake a *de novo* review of the Commissioner's decision, and the fact that the record may support a conclusion inconsistent with that of the Commissioner is immaterial. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## III.  DISCUSSION

### A.  The ALJ's Credibility Determination is Supported by Substantial Evidence

There is substantial evidence in the record to support the ALJ's conclusion that Hartman, while suffering from impairments, is not disabled.  First, the ALJ found that Hartman's impairments could reasonably be expected to cause pain and fatigue, but that her testimony regarding the intensity, persistence and limiting effects of those symptoms was not entirely credible.  (R. 18.)  A claimant's subjective complaints of pain must be supported by objective medical evidence. *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996); *Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005). The evidence must show the existence of a medical impairment that could reasonably be expected to produce the amount and degree of pain alleged. *Craig*, 76 F.3d at 591; *Johnson*, 434 F.3d at 657.

The ALJ based his finding on several pieces of evidence in the record.  First, the ALJ noted that Hartman's treatment for her pain was "routine and conservative in nature." (R. 20.) Second, the ALJ noted that Hartman's medical records show that she first complained of back pain in November 2005, but do not show any complaints or treatment for back or other pain since August 2006.  Additionally, Hartman reported to her physician in January 2006 that her pain had improved, and was not severe enough to require pain medication.  Finally, the ALJ found no indication in Hartman's medical records that she had ever complained to her doctors

-5-

that her pain limited her ability to stand and walk for extended periods, that she had to rest frequently, or that she had been diagnosed with arthritis or nerve damage. (*Id.*) The ALJ therefore found that Hartman's statements regarding her need to sit or lie down and rest frequently were inconsistent with the medical evidence in the record.

This determination was supported by substantial evidence. *See Johnson*, 434 F.3d at 658 (holding that ALJ's credibility determination was supported by substantial evidence where plaintiff's complaints were not consistent with lack of medical treatment and assessment, as well as plaintiff's own testimony of daily activities). As long as the ALJ's credibility determination is supported by substantial evidence, this Court cannot substitute its own credibility determination for that of the ALJ. *Craig*, 76 F.3d at 589.

## B. The ALJ Adequately Developed the Record

The ALJ's finding that Hartman's tumor was not "of a disabling nature that would preclude her from having the ability to work" (R. 20-21) was also supported by substantial evidence, and the ALJ adequately developed the record. While the ALJ's opinion does not specifically address the effects of the MIBG scans on Hartman's ability to work, it is clear from the record that the ALJ did consider those effects. The ALJ considered the opinion of a vocational expert. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citations omitted). The vocational expert appears to have reviewed the record in Hartman's case prior to testifying before the ALJ.[1] (R. 501.) The ALJ specifically questioned the vocational expert on a hypothetical person's prospects for

---

[1] Although the expert was not explicitly asked if he had reviewed the record, he was familiar with Hartman's age, education and work history. Additionally, he indicated, in partial response to a question by the ALJ, "According to

employment given the fact that she would need to miss three to four days of work every three months, and the vocational expert's opinion was that it would not preclude employment.[2] The vocational expert stated that in general, missing more than an average of 1.5 days of work per month would be considered excessive absence from work, and may negatively affect employment. (R. 504.) Even if Hartman were required to miss four days of work every three months, it would still average out to less than 1.5 days per month. Accordingly, the vocational expert's opinion was based on proper hypothetical questions.

The Magistrate found that this opinion and the ALJ's conclusion did not sufficiently account for any additional side effects or functional limitations that might result from the scans, such as fatigue, nausea, or pain. However, there is no evidence in the record that any such conditions or limitations result from the scans. While an ALJ has a duty to adequately develop the record, *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), there is no indication that the ALJ did not do so here. In this case, Hartman was represented by counsel prior to and at the hearing before the ALJ. (R. 13, 35.) Hartman's counsel questioned her at the hearing before the ALJ regarding the scans and the instructions Hartman had to follow in conjunction with the scans. (R. 490.) Hartman gave no indication during her testimony that the scans caused any side effects. Hartman actually had difficulty remembering all of the instructions she was required to follow before and after the scans. (*Id.*) Hartman was asked even asked whether she had to rest more after the scans, but Hartman did not answer that question. (*Id.*) Although Hartman testified that she had received three scans prior to the hearing before the ALJ, her medical

---

the record that I've reviewed...." (R. 501.)

[2] The ALJ also questioned the vocational expert on Hartman's prospects for employment given that she would have to lie down and rest three to four times throughout the day. (R. 504-505.) The vocational expert's opinion was that the need to rest, outside of regularly-scheduled break times, would compromise any type of employment. (R. 505.) This opinion, however, does not undermine the ALJ's ultimate conclusion that Hartman was not disabled, because the ALJ found that Hartman's testimony regarding the severity and limiting impacts of her pain were not entirely credible. As discussed *supra*, that finding was supported by substantial evidence and cannot be disregarded here.

records contain no evidence that the scans caused any side effects, such as increased pain, fatigue, or nausea, which would result in functional limitations. In the absence of any suggestion that the MIBG scans cause significant side effects, beyond those already considered by the ALJ, I cannot conclude that the ALJ failed to adequately develop the record or that a consultative examination is necessary.[3] The record contained sufficient evidence to support the ALJ's decision. 20 C.F.R. § 416.919a; *see also Bishop v. Barnhart*, 78 Fed.Appx. 265, 268 (4th Cir. 2003) (upholding ALJ's denial of a consultative examination because the record contained sufficient evidence to support the ALJ's decision). Therefore, a remand is inappropriate in this case.

## IV. CONCLUSION

After a thorough examination of the Commissioner's objections, the applicable law, the documented record, and the Magistrate's Report, the Court grants the Commissioner's objections. The Commissioner's decision that Hartman is not disabled is supported by substantial evidence. Accordingly, I decline to adopt the Report and Recommendation of the U.S. Magistrate Judge filed December 2, 2008. Instead, I hereby GRANT the Commissioner's motion for summary judgment (docket no. 13), AFFIRM the Commissioner's decision to deny benefits, and ORDER that the Clerk of this Court DISMISS this case and STRIKE it from the Court's docket.

---

[3] The Magistrate referred to a form filled out by a certified family nurse practitioner, which indicates the nurse practitioner's opinion that Hartman is unable to work for a period of 12 months as a result of her medical conditions. (R. 434.) The Magistrate recognized that a nurse practitioner is not an acceptable medical source, 20 C.F.R. §§ 404.1513, 416.913, but thought that this opinion supported the conclusion that the ALJ failed to adequately develop the record. However, the form is dated April 18, 2007 and describes an evaluation of Hartman that occurred on March 28, 2007, over two months after the hearing before the ALJ. Because this evidence does not refer to the relevant time period, which ceased on the date of the hearing before the ALJ, it cannot be "material" evidence

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record and to U.S. Magistrate Judge Michael F. Urbanski.

ENTER: This _15ᵗʰ_ day of January, 2009.

Norman K. Moon
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

properly considered for the first time on appeal. *See* 42 U.S.C. § 405(g).